**Eugene BRIGHT et al., Appellants,**

v.

**Lyle TAYLOR, Individually and as President of Local P–46, etc., et al., Appellees.**

No. 76–1292.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1976.

Decided May 4, 1977.

---

1. The jacket had a distinctive ink mark on the left lapel which was visible in the surveillance photo.

Thomas L. Staack, Waterloo, Iowa, for appellant.

Thomas D. Allison, Chicago, Ill., for Taylor; Irving M. King, Chicago, Ill., and Robert D. Fulton, Waterloo, Iowa, on brief.

Steven A. Weidner, Waterloo, Iowa, for Rath; Swisher & Cohrt, Waterloo, Iowa, on brief.

Before WEBSTER and HENLEY, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

Appellants appeal from a district court judgment which dismissed on the merits their suit brought under the Labor-Management Reporting and Disclosure Act. 29 U.S.C. § 401 *et seq.* The action was brought by 10 members of Local P–46 of Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, against Lyle Taylor (local union president), Richard Price (chief steward) and Fred Nolting (financial secretary) alleging violations of 29 U.S.C. §§ 411(a)(1), 411(a)(2) and 501(a) which assure union members of equal rights in voting, assembly and freedom of speech, and places a fiduciary duty on union officials. Other union members were subsequently allowed to intervene as party plaintiffs. During the course of the suit the district court ordered the union and the employer, Rath Packing Company of Waterloo, Iowa, joined as party defendants since part of the relief requested was nullification of new seniority provisions in the collective bargaining agreement which was ratified by union member vote on October 1, 1973 and signed by the union and Rath on October 2, 1973.

The district court concluded after a three-day trial that it lacked subject matter jurisdiction under 29 U.S.C. § 411 with respect to Rath, it lacked subject matter jurisdiction under 29 U.S.C. § 501(a) with respect to Rath and the union, and that plaintiffs had failed to prove by a preponderance of the evidence (A) that any of the defendants had violated plaintiffs' rights under 29 U.S.C. §§ 411(a)(1) and 411(a)(2) or (B) that any of the defendants had violated their fiduciary duties under 29 U.S.C. § 501(a).

■ On appeal, the plaintiffs-appellants contend that:

1) The district court erred in failing to make 13 specific factual findings. A comparison with the pretrial conference order shows that under Paragraph IVa plaintiffs listed 13 factual issues in the district court. Appellants list 10 of the identical issues and urge us to find that the court "erred" in failing to find them. The three other specific findings that appellants urge us to make here likewise embrace the legal contentions in Paragraph V of the pretrial order.

2) The district court erred in failing to find the plaintiffs proved by a preponderance of evidence that the defendants or any of them violated the rights of the plaintiffs under 29 U.S.C. §§ 411(a)(1) and (2).

3) The district court erred in failing to find the plaintiffs proved by a preponderance of evidence that the defendants or any of them violated their fiduciary responsibilities under 29 U.S.C. § 501(a).

4) The district court erred in failing to award plaintiffs' attorneys fees and costs.

It is clear that plaintiffs, having lost on the merits in the lower court, would attempt to retry all of the factual and legal issues again in this court. However, our scope of review is limited to determining whether the district court's factual findings are clearly erroneous. *Pignotti v. Sheet Metal Workers' Local 3,* 477 F.2d 825, 830 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973). We must also be mindful of the fact that the district court was able to observe the demeanor of the witnesses and weigh their credibility. *United States v. Minnesota Mining and Manufacturing Co.,* 551 F.2d 1106 (8th Cir. 1977). This is particularly relevant where, as here, conflicting testimony was given by plaintiffs' own witnesses in some circumstances.

■ Having reviewed the record, we cannot say the trial judge's finding that plaintiffs had failed to carry their burden of

---

* Robert Van Pelt, United States Senior District Judge, District of Nebraska, sitting by designation.

proof was clearly erroneous. Because it is unlikely that this exact factual situation will ever arise in the future, a detailed recitation of the facts would have little precedential value. Suffice it to say the crux of the dispute concerns a motion made at a February 22, 1973 first shift union meeting long in advance of contract negotiations. It was moved:

> That we appoint the Negotiating Committee to work up a proposal for plant seniority[1] for the next contract.

This motion was made by Peters, seconded by Young. This motion was interpreted by President Lyle Taylor as follows before a vote was taken:

> I interpret this that, if it would pass, it would allow the Negotiating Committee to draft a plant seniority proposal and bring it back to you for ratification at the contract.

It was subsequently amended as follows at the third shift meeting on March 8:

> Moved by Johnson, seconded by Young that any plan the Negotiating Committee arrives at be brought back to the Rank and File at a mass meeting with a secret ballot vote.

This amended version passed at both the first shift meeting on March 8 and the third shift meeting on March 22. No one interpreted the March 8 amendment. However, Taylor interpreted the February 22 motion to mean that the proposal would be brought back "for ratification at the contract" which clearly indicates that the seniority proposal would be brought back with all of the other proposed changes in the collective bargaining agreement to be voted on by the membership as to whether or not they wanted to ratify the contract. There was no objection to this interpretation. The March 8 amendment simply stated that the proposal be brought back to the rank and file at a mass meeting with a secret ballot vote. It never stated specifically that the seniority proposal was to be brought back prior to contract ratification and separate from all other issues.

Sections 411(a)(1) and 411(a)(2) provide:

(a)(1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

Every union member had an opportunity to vote on the negotiated contract.[2] After an

---

1. Prior to 1973, a three-prong seniority system was in effect—department seniority (which determined department lay-offs), plant seniority (which determined plant lay-offs), and job rights (the right to perform a particular job).

2. While the contract ratification did not take place at a mass meeting, as designated by the March 8 amendment, plaintiffs have not shown how an all day referendum could have prejudiced the election result. Plaintiffs' witness Jake Ahrends testified that he did not vote on Monday, October 1, 1973, because he was working the third shift which did not start until 10:30 P. M. that night and he lived 31 miles away from town and didn't want to "make a trip clear into town and back so I didn't vote." T.I., p. 226. Even if a Sunday mass meeting had been held, some people would have been working, and those who were not working would have had to make the "extra" trip back into town. Simply because the time was incon-

impartial contract explanation, members were given four days before the ratification vote to "express any views, arguments, or opinions" on the proposed contract and to campaign against it.

Section 501(a) provides:

(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

Defendants did not breach any fiduciary duties where they acted in accord with the language of the amended motion, were not secretive about the fact they were going to negotiate seniority, and did not make false or misleading statements in an attempt to coerce ratification of the contract. Furthermore, plaintiffs never showed that defendants had any interest or ulterior motive leading to the negotiation of the new seniority provisions, as none of the defendants' seniority status was improved by the new plan.

Plaintiffs would have us believe that this is another case like *Pignotti, supra.* However, *Pignotti* union officials clearly disregarded the will of the majority by holding successive elections on a pension plan after the membership had voted they did not want to participate in the plan. The same type of situation existed in *Johnson v. Nelson,* 325 F.2d 646 (8th Cir. 1963), where local union officials ignored the vote of the majority and refused to make certain payments which had been approved. In contrast, the union officials here had reason to believe that the union membership favored a change in seniority—the Negotiating Committee, who is directly responsible for negotiating contracts with the company, was appointed by the membership to draft a seniority change and bring it back to the membership at the contract ratification at a mass meeting with a secret ballot vote. What is more, the membership ratified the contract after being told if they were dissatisfied with any portion of it they should vote against it.

█ It was brought out at the oral argument that a new contract had been negotiated in the fall of 1976 which also contained the plant seniority provision and was again ratified by the membership. Appellants contended that this did not make the case moot because when straight plant seniority took over it eliminated the third shift workers who opposed plant seniority, and that because of lay-offs, etc., some of those persons who opposed plant seniority had taken other jobs. This was contested by appellees who claimed that a reduction in the total number of votes cast in the 1976 election was due to the fact that plant seniority was no longer a hotly contested issue. Appellees also informed the court that defendants Taylor and Price were reelected to their union positions, while defendant Nolting chose not to run.[3]

venient for a few, does not mean they were denied the right to vote.

3. After oral argument, appellees made a motion to supplement the record with an Affidavit of

On its face, the case would appear to be moot. In their original complaint plaintiffs asked that:

1. Defendants be restrained from any future fiduciary violations;

2. the court declare the October 1 vote a nullity or in the alternative order the defendants to reopen the contract as to seniority and not implement any type of seniority plan until it was authorized by the rank and file.

No fiduciary violations have been alleged in the 1976 elections, and a second vote has been held. We are not in a position to judge whether there is any merit to plaintiffs' contention that many of those persons opposing seniority were eliminated or left the company.

■■■ The issue of mootness is crucial. Mootness is a jurisdictional question because federal courts are not empowered to decide moot questions or abstract propositions. *United States v. Alaska S. S. Company,* 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920). The federal courts impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy. *Liner v. Jafco, Inc.,* 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). See, *North Carolina v. Rice,* 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

*Locke v. Board of Public Instruction of Palm Beach County,* 499 F.2d 359, 364 (5th Cir. 1974). Courts bound by the mootness doctrine occasionally rule on the merits. *See Wirtz v. Operating Engineers Local 410,* 366 F.2d 438 (2d Cir. 1966), which considered the merits in order to determine

whether the appeal should simply be dismissed as moot or whether the judgment should be vacated with instructions to the district court to dismiss the complaint as moot. *See also Longshoremen's Local 21 v. Reynolds Metals Co.,* 487 F.2d 696, 697 (9th Cir. 1973), *cert. denied,* 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974). Cases will sometimes be decided on the merits, even though they would ordinarily be moot, where the problem is capable of repetition yet evading review. *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1968); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). No one here has suggested that in the future we are likely to be confronted again with a situation involving the same factual background. The history of collective bargaining tends to be unique from year to year, even among the same parties. However, cases involving breach of fiduciary duty are not to be taken lightly, particularly in this circuit which gives a broad scope interpretation to § 501. We feel that where the protection of union members' rights was of sufficient public importance to warrant the passage of the Labor-Management Reporting and Disclosure Act, it is also of sufficient "public importance" for us to decide this case on the merits, *Solien v. Drivers Local 610,* 440 F.2d 124, 127 (8th Cir. 1971), since to do otherwise might discourage union members from bringing suit if they felt a violation had occurred and knew it would be impossible to obtain review before a contract expired. We need not at this time speculate as to what relief, if any, would be available in such a case,[4] since the result here is the same whether the case is dismissed as moot or decided on the merits.

---

Lyle Taylor which detailed the fact a new collective bargaining contract had been ratified which contained identical seniority provisions. We grant the motion because the issue of mootness is relevant at any stage in the proceedings and secondly, the affidavit does not really present anything new that was not brought out during oral arguments before the court.

4. Similarly, we do not need to reach the question of whether the district court was correct in finding it did not have subject matter jurisdiction under 29 U.S.C. § 501(a) with respect to Rath and the union, and lacked subject matter jurisdiction under 29 U.S.C. § 411 with respect to Rath.

Finally, we note that defendants have argued that plaintiffs have not exhausted their union remedies before instituting this suit and are precluded from relief in the courts. The district court aptly rejected this contention in its Order of August 7, 1974 by pointing out that: 1) it believed exhaustion would have been unavailing in light of the fact the international refused to open the contract and considered it binding; 2) that exhaustion is not a prerequisite under 29 U.S.C. § 411(a)(4) which states that a union member "may be required to exhaust reasonable hearing procedures" and where the union constitution provided a union appellate procedure for violations alleged to occur under that constitution (which was not the case here); and 3) it believed that since 10 months had already elapsed since the contract was ratified, there should be judicial resolution without delay.

The district court judgment dismissing plaintiffs' suit for failure to show a violation of 29 U.S.C. §§ 411(a)(1), 411(a)(2) and 501(a) is affirmed.