Ernest GABAUER, Joe DeLos Santos, Jr., Coleman G. Lewis, Jr., C. L. Greenfield, Elbert Hill and Claude J. Huskey, Appellants,

v.

Leonard WOODCOCK, Emil Mazey, Kenneth Worley, C. E. Mattix, Edward Lavin, John T. Webster, Roy Hartzell and Donald Young, Appellees.

No. 77–1094.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1978.

Decided March 6, 1979.

Rehearing and Rehearing En Banc Denied March 27, 1979.

Donald W. Jones of Prewitt, Jones & Karchmer, Springfield, Mo., for appellants.

John A. Fillion, UAW, Detroit, Mich., for appellees.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON and HENLEY, Circuit Judges, en banc.

HEANEY, Circuit Judge.

This case is before the Court en banc on the appellees petition for rehearing. The appellants are members of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local 25 in St. Louis, Missouri. The appellees are, or were at the time this litigation commenced, officers of the UAW International Union, Local 25, or affiliated Community Action Program Councils (CAP Councils). The complaint contains two counts. In the first count, the appellants invoke §§ 201(c) and 301(a) and (b) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 431(c) and 461(a) and (b), to gain an opportunity to inspect various union books and records. In the second count, the appellants allege a cause of action based on § 501 of the LMRDA, 29 U.S.C. § 501, for the appellees' involvement in the disbursement of union funds to various political, social and civic organizations. The District Court dismissed the first count in part for improper venue and in part for a pleading deficiency. The court also dismissed the second count in its entirety for failure to state a claim upon which relief could be granted. When the matter was first before us, we affirmed in part and reversed in part as to the first count, and

affirmed the dismissal of the second count. We adhere to our earlier opinion.[1]

## COUNT I

The appellants filed their complaint in the Eastern District of Missouri. In Count I, they requested an order requiring the appellees to make available to them certain union records. Section 201(b) requires that every labor organization file with the Secretary of Labor an annual report, signed by the president and treasurer of the organization which describes, among other things, the disbursements made by it during the preceding fiscal year. In addition, § 201(c) provides:

> Every labor organization required to submit a report under this title shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in * * * the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report.

29 U.S.C. § 431(c).

Section 301(a) subjects labor organizations which establish and administer trusteeships over subordinate bodies to certain additional reporting requirements. Every such labor organization must file with the Secretary of Labor semiannual reports signed by the president, treasurer, and trustees which include the reasons for the establishment or continuation of the trusteeship and the financial condition of the subordinate organization. In addition, the labor organization must file the annual § 201(b) financial report on behalf of the local unit. Finally, § 301(b) makes the private inspection provisions of § 201(c) applicable to all § 301(a) reports.

The appellees filed a motion to dismiss the complaint, stating, with respect to Count I, that venue was improper; that the appellants failed to meet the just cause and specificity requirements of § 201(c); and that the action was barred in part by the statute of limitations. The District Court granted the appellees' motion to dismiss in part for improper venue and in part for a pleading deficiency.

Venue is governed by § 201(c). This section keys venue to the principal office of the labor organization required to file the report in question. The appellants seek to verify four annual financial reports for Local 25. Three of these were prepared and signed by the president and treasurer of the local, but one was apparently filed by the UAW International and its trustees on behalf of Local 25. In addition, the appellants seek certain reports and records from the local CAP councils and other records from the UAW which has its principal offices in Detroit. The appellees conceded to the trial court that venue was proper as to the records necessary to substantiate the reports filed by local officials. Conversely, there can be little dispute that venue was improper with respect to the reports filed by the International officials pertaining to files and records kept in Detroit.

The controversy involves the records necessary to verify the trustees reports filed pursuant to § 301(a). The lower court ruled that venue was improper as to these reports:

> As this Court reads 201(c), since the UAW was the organization required to file a report by 301, a suit for the records necessary to verify this report could only have been brought against the UAW or its officers and could not have been brought against Local 25 or its officers, even though the report concerned the fi-

---

1. We have adopted much of the unpublished opinion of the panel that initially decided this matter. Our original opinion is withdrawn. The District Court's opinion is published at 425 F.Supp. 1 (E.D.Mo.1976). *See Huskey v. United Automobile, Aerospace & A. I. Wkrs.*, 520 F.2d 1096 (8th Cir. 1975), *cert. denied*, 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653 (1976); *Gabauer v. Woodcock*, 520 F.2d 1084 (8th Cir. 1975), *cert. denied*, 423 U.S. 1061, 96 S.Ct. 800, 46 L.Ed.2d 653 (1976).

nancial condition of Local 25. A suit under 201(c) cannot be brought against the UAW in this Court since venue would be improper.

*Gabauer v. Woodcock,* 425 F.Supp. 1, 4 (E.D.Mo.1976).

The appellants insist that the existence of a trusteeship should not change the place of venue for reports filed on behalf of the local unit.

■ Although the venue provisions of §§ 301(b) and 201(c) could be construed in the manner adopted by the District Court, we think the better view would permit suit for the verification of § 201(b) reports signed by trustees on behalf of a subordinate labor organization to be brought at the location where the records necessary to verify those reports are most likely to be. The trusteeship had been discontinued by the time the suit was commenced, so we cannot imagine that the UAW would have kept the records at issue in its Detroit office during any relevant period of time. Taking that fact into account, we hold that venue was appropriate insofar as the appellants sought records actually under the control of Local 25 officials, even though those records are relevant only to reports filed by the UAW and its trustees. For the records actually under the control of International officials, however, venue may be found only in the district of the principal International office.

■ Although the District Court understood that venue was appropriate for some of the records sought, it dismissed Count I in its entirety. The court explained: "[U]ntil amended pleadings are filed for that part of Count I over which this Court has venue, the question of the statute of limitations cannot be resolved." *Id.* To remedy this, the court dismissed Count I, giving the appellants twenty days within which to file an amended petition. We are aware of no authority which suggests that a complaint is subject to dismissal if it fails to plead in such a way that the statute of limitations question can be resolved on a motion to dismiss. In general, the limita-

tions question is an affirmative defense to be pleaded and proved by the appellees. We note that Federal Rule of Civil Procedure 12(e) provides:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired.

The record in this case reflects no such motion, and we can perceive no need for a *sua sponte* dismissal of the complaint on this ground in this case.[2]

Since venue was proper with respect to the bulk of the records sought, we reinstate the complaint and remand this case to the District Court for further proceedings. In view of the continuing disputes as to whether just cause has been shown for the examination of the books and the nature and scope of the examination if such cause has been shown, we deem it important to lay down guidelines for the assistance of the District Court.

■ First, the party seeking to examine the union records has the burden of showing just cause.

Second, the just cause requirement must be read in a narrow sense when invoked to resist an examination. It is sufficient if a reasonable union member would be put to further inquiry. *Fruit and Vegetable Packers & Ware. Local 760 v. Morley,* 378 F.2d 738 (9th Cir. 1967); *Allen v. Local 92, Iron Workers,* 47 L.R.R.M. 2214 (N.D.Ala.1960).

■ Third, a principal purpose of the reporting provision is to provide union members with the vital information necessary for them to take effective action in regulating affairs of their organization. Individual members of a union are fully competent to regulate union affairs if they have minimum democratic safeguards and detailed essential information about the union. S.Rep. No. 187, 86th Cong., 1st Sess. 8

---

**2.** We express no view on the statute of limitations question.

(1959), *reprinted in* I NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 405 (1959) [hereinafter cited as Legislative History], U.S.Code Cong. & Admin.News 1959, p. 2318; *United States v. Budzanoski,* 462 F.2d 443 (3rd Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972).

■ Fourth, the right to examine includes the right to make such copies as are reasonably necessary for the conduct of the examination, subject to the right of the union to protect itself against harassment and copying of protected materials, *Conley v. United Steelworkers of America, etc.,* 549 F.2d 1122 (7th Cir. 1977), and the right to be assisted by experts in making the examination, *Antal v. District 5, United Mine Workers of America,* 451 F.2d 1187 (3rd Cir. 1971).

Fifth, the records of the Missouri CAP Council and the Greater St. Louis CAP Council are union records within the purview of § 201.

## COUNT II

In Count II of their complaint, the appellants allege that the appellees have violated § 501 of the LMRDA which provides in part as follows:

(a) * * * The officers, * * * and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

(b) * * * When any officer, * * or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, * * or representative in any district court of the United States * * * to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be ex parte.

They allege that the violations consist of unlawfully and wrongfully diverting a large part of

CAP fund money into the political campaigns of candidates for public office and for various partisan political activities totally unrelated to the interests and welfare of the union and its members or to the functions and purposes of the union as collective bargaining representatives of plaintiffs and their fellow dues paying members of the union. Plaintiffs are further informed and believe, and therefore aver, that defendants have paid over and expended, and are now continuing to pay over and expend, substantial amounts of CAP fund money in the form of cash contributions to candidates for federal office, including candidates for President,

Vice-President, Senate and House of Representatives, and have otherwise expended said CAP funds to support the candidacy of candidates for said offices, all in violation of the federal statutory prohibitions against such expenditures by labor organizations provided in the Federal Corrupt Practices Act. 18 U.S.C. Section 610.

\* \* \* [They] have regularly and over long periods of time unlawfully and wrongfully diverted a substantial part of union membership dues money and other union assets to various organizations and groups espousing and promoting ideological doctrines and causes totally unrelated to, and in many instances antithetical to, the interests and welfare of the union and its members \* \* \* [including]:

National Students Associations (NSA)

Students for a Democratic Society (SDS)

Students Non-Violent Coordinating Committee (SNCC)

New Mobilization for Peace

Turn Toward Peace

Citizens Committee for a Nuclear Test Ban

National Committee for a Sane Nuclear Policy (SANE)

Americans for Democratic Action (ADA)

United World Federalists

Peace With Freedom Inc.

Dubois Memorial Committee

Confederate Spanish Societies

United States Committee for Democracy in Greece

and numerous other such organizations.

The appellants further allege that:

[The] defendants have wrongfully refused to permit the plaintiffs personally and through attorneys and accountants of their choosing and designation to inspect the financial records of Local 25 and the various funds controlled by the defendants into which the fees, dues and assessments exacted from the plaintiffs and their fellow members have been diverted by the defendants, including the aforesaid CAP Council funds.

Defendants have rendered it impossible for the plaintiffs to have taken any measures to prevent the unlawful and wrongful diversions of union money and assets as aforesaid due to the secrecy of the defendants in committing said violations and due to the wrongful taking over by the defendants of all of the assets, properties, and affairs of the Chevrolet Unit of Local 25 in such manner as to prevent the plaintiffs from being able to effectively exercise any rights under the Local Union bylaws or Constitution or to be able to have access in any meaningful way to any of the intra-union remedies and procedures.

The appellants finally allege that they

\* \* \* hav[e] fully exhausted all remedies and procedures available to them to the best of their abilities[.]

Prior to filing this action, plaintiffs have requested the Executive Boards of UAW International and UAW Local 25, to file, suit to secure an accounting by defendants and to recover damages from them for violation of their fiduciary duties \* \* \*, but the said labor organizations and the governing boards and officers thereof have failed and refused to take such action[.]

The appellants asked the District Court to:

A. Direct defendants \* \* \* to furnish a full and complete accounting for the period from 1962 to the present with respect to moneys received by them in their capacity as officers or representatives of Local 25, or the International Union, or in respect of any other fund derived from dues and fees of members of Local 25, including CAP funds, and to furnish a full and complete accounting for such period respecting all moneys expended by them including all amounts expended for or in connection with partisan political activities and support of ideological causes or organizations or groups espousing ideological causes.

B. Direct defendants \* \* \* [to] make available for inspection by plaintiffs and such accountants and attorneys as they may employ all books, accounts,

and records pertaining to the financial affairs of Local 25 UAW Region 5 CAP funds, Greater St. Louis CAP funds, and any other funds derived from dues and fees of the members of local 25.

C. Issue an order restraining and enjoining said defendants in their capacities as officers or representatives of Local 25 or the International Union from making any expenditures, either directly or indirectly, for partisan political activities or for support of ideological causes or organizations or groups espousing ideological causes, from the dues and fees paid in by plaintiffs and other employees of the General Motors Corporation Chevrolet Assembly Plant under and through the compulsory membership requirements of the labor agreements as herein alleged.

D. Require the defendants individually to repay to Local 25 all sums of money wrongfully diverted by them into partisan political campaign activities and ideological causes and organizations in violation of the rights of such members and the plaintiffs as aforesaid.

E. Issue an order requiring UAW, UAW Local 25 and the officers thereof to pay reasonable attorney's fees and other costs and expenses of this action, including a reasonable fee of any accountants or other persons whose services may be necessary to obtain full and complete disclosure of the financial records and data of UAW Local 25, and other funds administered by defendants as herein alleged.

The District Court dismissed this count for failure to state a cause of action. We feel that it acted properly.

*A.*

■ We do not view § 501 as an independent discovery tool to investigate official use of union funds. Section 201 provides that tool. If § 501 were read as broadly as appellants would have it, § 201 would become superfluous. Section 501 is but one provision in an entire act. It is not intended to encompass all of the duties and rights of the entire act. Section 201 is the provision intended by Congress to compel the union hierarchy to reveal to the membership the nature and detail of official union activities. As construed by this Court, that section will provide the membership with the information they need. Section 501, by contrast, describes not a general duty to report but the nature of the obligation an individual assumes with his union office. Thus, insofar as the appellants invoke § 501 as a discovery tool to investigate official uses of their funds, their efforts are misplaced. Section 201 provides their remedy if one exists.

*B.*

■ We believe that the trial court properly followed *McNamara v. Johnston,* 522 F.2d 1157 (7th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), and correctly held that the appellees did not breach their fiduciary duty by making the questioned expenditures.[3] In our view, the expenditures were clearly authorized by the union's constitution and resolutions of the union's national convention.[4]

The 1968 UAW convention gave the International Executive Board (IEB) interim

---

**3.** The decision appealed from must be treated as an order of summary judgment. Rule 12(b) states in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *.

> The lower court treated the matter as a motion for summary judgment. This was clearly appropriate inasmuch as both parties submitted extensive affidavits and exhibits relating to the stated claim.

**4.** Though the appellants do not presently pursue their private claims, those remedies remain unaffected by the outcome of this derivative litigation. The UAW has adopted a rebate procedure under which the appellants are entitled to a rebate of a proportion of their dues corresponding to the amount of union funds which are allocated to political activities. The UAW Constitution, Article 16, Section 7, provides:

> (a) Any member shall have the right to object to the expenditure of a portion of his dues money for activities or causes primarily

authority to establish a national and local CAP structure to replace the soon-to-be-terminated relationship with the AFL–CIO programs. The IEB thereafter established a CAP structure which has since been ratified by UAW conventions.

The 1972 UAW Constitution catalogues some of the objectives of the UAW in Article 2:

Section 4. * * * to vote and work for the election of candidates and the passage of improved legislation in the interest of all labor. * * *

Section 5. To engage in legislative, political, educational, civic, welfare and other activities which further, directly or indirectly, the joint interests of the membership of this organization in the improvement of general economic and social conditions * * *.

Article 23, Section 1, describes the objective and purpose of the UAW Community Action Program:

political in nature. The approximate proportion of dues spent for such political purposes shall be determined by a committee of the International Executive Board, which shall be appointed by the President, subject to the approval of said Board. The member may perfect his objection by individually notifying the International Secretary-Treasurer of his objection by registered or certified mail; provided, however, that such objection shall be timely only during the first fourteen (14) days of Union membership and during the fourteen (14) days following each anniversary of Union membership. An objection may be continued from year-to-year by individual notifications given during each annual fourteen (14) day period.

(b) If an objecting member is dissatisfied with the approximate proportional allocation made by the committee of the International Executive Board, or the disposition of his objection by the International Secretary-Treasurer, he may appeal directly to the full International Executive Board and the decision of the International Executive Board shall be appealable to the Public Review Board or the Convention Appeals Committee at the option of said member.

The appellees contend that the UAW's rebate procedure, together with the failure of the appellants to avail themselves of that remedy, bars this suit, relying on *Abood v. Detroit Board of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Brotherhood of Railway and S. S. Clerks v. Allen,* 373 U.S. 113,

[I]t shall engage in community, civic, welfare, educational, environmental, cultural, citizenship-legislative, consumer protection, community services and other activities to improve the economic and social conditions of UAW members and their families and to promote the general welfare and democratic way of life for all people.

Article 7, Section 2, authorizes the expenditure of union funds to accomplish the objectives of the UAW and confers on the International Executive Board substantial supervisory discretion. To similar effect is Article 23, Section 8. In addition, convention resolutions affirmatively encouraged support for diverse causes, many of which have no more proximate relation to collective bargaining than do the groups disliked by the appellants. The membership did not try, by either the constitution or the resolutions, to circumscribe the discretion of union officials. The appellants argue that the

83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *International Ass'n of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Railway Employes Dept. v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956). The appellants object that the procedure is deficient in various respects. These arguments are inapposite. In each of the cases cited in this note, individuals sought to recover for themselves union dues or agency fees that the union had devoted to political and ideological purposes. While a rebate procedure may have some effect on such private claims, *compare Reid v. McDonnell Douglas Corporation,* 443 F.2d 408 (10th Cir. 1971), *after remand,* 479 F.2d 517 (1973), *with Seay v. McDonnell Douglas Corporation,* 427 F.2d 996 (9th Cir. 1970), *after remand,* 533 F.2d 1126 (1976), it cannot bar derivative claims of the sort pressed here.

Since the appellants in this case have eschewed their personal rights in favor of a derivative cause of action on behalf of the union for the recovery of damages from union officers, the issues in this case are very different than those of the cases cited above. We need not consider, as did those courts, the fiduciary duty of a union to its dissenting members. The issue in this case is the very different duty of union officers to the union organization. The adoption of a rebate procedure by the organization has little relevance to the question whether an officer has fulfilled the trust of his office.

pertinent provisions require that expenditures be for "the benefit of the members" but the language quoted above invokes much broader concerns. The union membership chose not to specifically restrict the discretion of union officers. Given the broad authorizations endorsed by the union membership and the absence of specific restrictions, this Court has neither the power nor standards by which to review expenditures challenged by a minority of the union merely because of their politically controversial character.

The appellants contend that the constitutional provisions and resolutions are void under § 501 as general exculpatory clauses. *McNamara v. Johnston, supra,* disposed of an identical claim as follows:

> Section 501 was intended to follow "the well-established distinction between conferring authority upon an agent or trustee, which is permissible and protects him against liability, and attempting to excuse breaches of trust, which is here made void as against public policy." H.R. Rep. No. 741, 86th Cong., 1st Sess. 81–82, U.S.Code Congressional and Administrative News, 2480 (1959). Without doubt, the provisions and resolutions upon which the UAW relies fall within the former category of measures that confer authority.

*Id.* at 1164.

We agree with that disposition.

We find little merit in the appellees' view that any expenditure unrelated to legitimate collective bargaining activities violates § 501. The plain language of the section belies their argument. Section 501 specifically provides that union representatives have the duty to expend union funds in accordance with the union's constitution, bylaws and resolutions of the governing bodies adopted thereunder. *See Bright v. Taylor,* 554 F.2d 854 (8th Cir. 1977); *Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n,* 477 F.2d 825 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Johnson v. Nelson,* 325 F.2d 646 (8th Cir. 1963); *Highway Truck Drivers & Helpers, etc. v. Cohen,* 284 F.2d

162 (3rd Cir. 1960), *cert. denied,* 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961); Clark, *The Fiduciary Duties of Union Officials Under Section 501 of the LMRDA,* 52 Minn.L.Rev. 437 (1967); Katz, *Fiduciary Obligations of Union Officers Under Section 501 of the Labor-Management Reporting and Disclosure Act of 1959,* Lab. L. J. 542 (June, 1963); Note, *The Fiduciary Duty of Union Officers Under the LMRDA: A Guide to the Interpretation of Section 501,* 37 N.Y.U.L.Rev. 486 (1962); Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959,* 58 Mich.L.Rev. 819 (1960); Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L. Rev. 195 (1960).

There will, of course, be exceptions to this rule, *e. g.,* where the expenditures are violative of a specific provision or express policy in the Act, such as § 202(a) conflicts of interest; § 401(g), using union funds to promote the candidacy of persons; and § 503(a), making a loan to an officer in excess of $2,000. But the exceptions are not applicable here. Without express authorization of Congress, we cannot take unto ourselves the role of deciding which causes a union can or cannot support.

The legislative history of § 501 also supports the view we have adopted. *See McNamara v. Johnston, supra.* The section originated in the House Education and Labor Committee. The report of the Committee emphasized that the government must make certain that the power of labor unions was used "for the benefit of employees whom the unions represent * * * and not for the personal profit and advantage of the officers and. representatives of the union." H.R.Rep. No. 741 on H.R. 8342, 86th Cong., 1st Sess. 11 (1959), *reprinted in* I Legislative History at 769, U.S.Code Cong. & Admin.News 1959, pp. 2318, 2433. Nothing in the report indicates any intent on the part of the House Committee to tell unions that they could not spend their money on unpopular causes or organizations if such expenditures were authorized by the membership. To the contrary, the report states that:

[O]ur language does not purport to regulate the expenditures or investments of a labor organization. Such decisions should be made by the members in accordance with the constitution and bylaws of their union. Union officers will not be guilty of breach of trust when their expenditures are within the authority conferred upon them either by the constitution and bylaws or by a resolution of the executive board, convention or other appropriate governing body (including a general meeting of the members) not in conflict with the constitution and bylaws.

Id. at 81, *reprinted in* I Legislative History at 839, U.S.Code Cong. & Admin.News 1959, p. 2480.[5]

Senator McClellan was instrumental in having the section inserted in the Senate bill. The report of the Senate Labor Committee states that the Committee followed three principles in acting on the bill:

1. The committee recognized the desirability of minimum interference by Government in the internal affairs of any private organization. Trade unions have made a commendable effort to correct internal abuses; hence the committee believes that only essential standards should be imposed by legislation. Moreover, in establishing and enforcing statutory standards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents.

2. Given the maintenance of minimum democratic safeguards and detailed essential information about the union, the individual members are fully competent to regulate union affairs. The committee strongly opposes any attempt to prescribe detailed procedures and standards for the conduct of union business. Such paternalistic regulation would weaken rather than strengthen the labor movement; it would cross over into the area of trade union licensing and destroy union independence.

3. Remedies for the abuses should be direct. Where the law prescribes standards, sanctions for their violation should also be direct. The committee rejects the notion of applying destructive sanctions to a union, i. e., to a group of working men and women, for an offense for which the officers are responsible and over which the members have, at best, only indirect control. Still more important the legislation should provide an administrative or judicial remedy appropriate for each specific problem.

S.Rep. No. 187, 86th Cong., 1st Sess. 7 (1959), *reprinted in* I Legislative History at 403, U.S.Code Cong. & Admin.News 1959, p. 2323.

The Senate debates specifically dealt with § 501. In the course of the debates, the following colloquy occurred:

Mr. KENNEDY. Mr. President, I should like to ask the Senator from Arkansas a few questions.

Suppose an officer of a union expends money for an educational purpose, to advance what he and the other officers consider to be the interests of the union. Assume that there is nothing dishonest about the expenditure. It is not an expenditure for the purpose of taking money in a back-door deal. It is an honest expenditure for educational purposes, without any impropriety. Under the amendment of the Senator from Arkansas, would it be possible for a member to sue, on the argument that the educational purpose, which he does not like, is not really in keeping with the purposes of a labor organization? Could he take the case into court?

**5.** Professor Archibald Cox served as a consultant to the Senate Labor Committee in drafting the LMRDA. In writing about the problem that concerns us here, he stated:

If there were any ambiguity it would be dispelled by the statement of five members of the House Labor Committee in reporting the committee bill for they were the five who sponsored the bill and they included Congressman O'Hara, who proposed Section 501 in the Labor Committee. Cox, *Internal Affairs of Labor Unions Under the Labor Reform Act of 1959,* 58 Mich.L.Rev. 819, 829 (1960). *See also* Wollett, *Fiduciary Problems Under Landrum-Griffin,* 13 Annual Conference on Labor 267, 278–279; Smith, *The Labor-Management Reporting and Disclosure Act of 1959,* 46 Va.L.Rev. 195, 228 (1960).

Mr. McCLELLAN. He might make such an allegation, and he might go to court. Each case must stand on its own merits. If the court found that the money was used for legitimate union purposes, for purposes which were proper under the constitution, and that it had been voted to authorize the use of money for educational purposes, I think it would come within the purview of the authority and right of the union officer. But, as my friend knows, the purpose of this amendment is to get at those who organize an executive board of their own, whose members are all in cahoots. One says to the other, "I will keep you employed at a good salary and give you a good expense allowance. You just do what I want."

That sort of thing is being done. Union treasuries are being pilfered in that way. I believe that this is a good amendment.

\* \* \* \* \* \*

Mr. KENNEDY. \* \* \*

Mr. President, what I am attempting to do is ascertain the purpose of the amendment. Is it the purpose of the amendment to insist that union officers who expend money shall not have a conflict of interest, and that they shall not attempt, through indirect means, to pilfer a union treasury for their own benefit? If so, in my opinion it would be a proper amendment.

Mr. McCLELLAN. That is exactly what I am trying to do. I have not had the opportunity to study the question as thoroughly as the Senator has done during the course of the hearings. However, I know that there have been flagrant and repeated abuses in this area.

\* \* \* \* \* \*

Mr. ERVIN. \* \* \* We are under an obligation to see that the money is safely kept, to the end that it may be applied to duly authorized and legitimate union purposes.

Mr. KENNEDY. As I understand, the Senator from Arkansas holds that view also.

Mr. McCLELLAN. That is correct. If the Senator has any thought that I am trying to interfere with COPE, that is not correct. There may be amendments directed to that point, and to deal with that direct question. However, I am not offering my amendment on the direct question of political contributions. Everyone · knows my views on that subject, I assume. This is not a drive at that situation. It is a drive at the skulduggery of some leaders when they meet in executive session and pay off this one and pay off that one. .

105 Cong.Rec. 5856–5857 (1959), *reprinted in* II Legislative History at 1130–1131.

In discussing the Conference Report, S.Doc. No. 51, 86th Cong., 1st Sess. (1959), the Senate observed that:

The general principles stated in the bill are familiar to the courts, both State and Federal, and therefore incorporate a large body of existing law applicable to trustees, and a wide variety of agents. The detailed application of these fiduciary principles to a particular trustee, officer, or agent has always depended upon the character of the activity in which he was engaged. They bear upon a family trustee somewhat differently than a corporate director, upon an attorney quite differently than a real estate agent. The bill wisely takes note of the need to consider "the special problems and functions of a labor organization" in applying fiduciary principles to their officers and agents.

The bill does not limit in any way the purposes for which the funds of a labor organization may be expended or the investments which can be made. Such decisions should be made by the members in accordance with the constitution and bylaws of their union. Union officers will not be guilty of breach of trust under this section when their expenditures are within the authority conferred upon them either by the constitution and bylaws, or by a resolution of the executive board, convention or other appropriate governing body—including a general meeting of the

members—not in conflict with the constitution and bylaws. This is also made clear by the fact that section 501(a) requires that the special problems and functions of a labor organization be taken into consideration in determining whether union officers and other representatives are acting responsibly in connection with their statutory duties. The problems with which labor organizations are accustomed to deal· are not limited to bread-and-butter unionism or to organization and collective bargaining alone, but encompass a broad spectrum of social objectives as the union may determine.

105 Cong.Rec. 16415 (1959), *reprinted in* II Legislative History at 1433.

### C.

■ The appellants' allegations pertaining to 18 U.S.C. § 610 complicate the analysis but they do not change the result of ·the case. We first consider the appellants' request for future injunctive relief. At the outset, we note that the Federal Election Campaign Act Amendments of 1976, Pub.L. 94–283, May 11, 1976, repealed § 610 and reenacted its substance at 2 U.S.C. § 441b. Thus, when we speak of future injunctive relief, we must refer to § 441b. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court held that the Federal Election Campaign Act Amendments of 1974 relegated a shareholder's § 610 claim for injunctive relief against corporate officers to the initial review of the Federal Election Commission (FEC). The Court dismissed the shareholder's claim even though the complaint had been filed before the creation of the FEC. In *McNamara v. Johnston, supra,* the Seventh Circuit concluded that a union member's § 501 claim for future injunctive relief was subject to the primary jurisdiction of the FEC as well insofar as it was premised on violations of § 610. The same result obtains in this case under the 1976 amendments. Congress has explicitly expressed its desire to have the FEC engage in methods of conference, conciliation and persuasion before litigation ensues over any federal election laws. 2 U.S.C. § 437g; S.Rep. No. 94–677, 94th Cong., 2d Sess. 1–2 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 929–930; H.Conf.Rep. No. 94–1057, 94th Cong., 2d Sess. 45–50 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 960–965. We should not permit circumvention of such negotiation under the guise of a parallel cause of action. Thus, the claim for future injunctive relief must be dismissed for lack of jurisdiction.

■ The appellants also press a derivative claim for damages for the expenditures already made that allegedly violated § 610. Four of the appellees, the appellants claim, devoted Community Action Program (CAP) funds to federal political campaigns. This fact alone does not establish a violation of § 610. A 1972 amendment to § 610 explicitly permitted the expenditure of funds for "the establishment, administration and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a * * * labor organization." This amendment was intended to codify preexisting law. *See Pipefitters Local Union No. 562 v. United States,* 407 U.S. 385, 408–412, 92 S.Ct. 2247, 2262, 33 L.Ed.2d 11 (1972). Though the record on UAW contributions to federal campaigns is somewhat sketchy, it appears that these donations did come from a "separate segregated fund" or at least from a fund intended to qualify as such under § 610. The UAW's CAP structure is predominantly financed with regular dues, but it also includes a separate V CAP fund supported by voluntary contributions designated for political causes.[6] The appel-

---

6. The 1972 UAW Constitution, Article 12, Sec-· tion 20, for example, provides:

The International Executive Board shall create and operate a Political Action Committee to be known as UAW Voluntary Community Action Program Committee (UAW V CAP). This Committee shall be authorized to make policy decisions concerning expenditures and

contributions involving federal elections and to make expenditures and contributions from a fund established by voluntary contributions from UAW members, their families and friends * * *.

As noted below, we do not hold that the V CAP Councils are "segregated fund[s]" within the meaning of· 2 U.S.C. § 441b. We merely hold

lants have introduced no evidence to indicate that any federal political contributions were made with general CAP funds, as opposed to V CAP funds. Since V CAP is separately funded, it is reasonable to infer that the UAW collectively thought those monies could legally be used for federal campaigns. The appellees, as agents, were entitled to rely on the union's grant of authority in making political contributions from the V CAP funds. As stated in *McNamara*:

> [Under the common law of fiduciary obligations, codified in § 501,] it is * * * clear, and fundamental fairness requires, that as between agent and principal, an agent cannot be held liable for the use of the principal's property in an unlawful manner when it is reasonable to infer that the principal authorized the agent's conduct.

522 F.2d at 1165 (footnote omitted).

Of course, as pointed out by the *McNamara* opinion, apparent authority does not immunize union officials from the criminal sanctions of § 610, or the enforcement provisions flowing from § 441b, upon a showing that V CAP is in some respects deficient.

There is no evidence in the record to indicate anything but that the appellees relied on their apparent authority. There is no evidence that would justify an inference that the appellees did not comply with the requirements of their constitution. Nor is

there any evidence to the effect that any of the appellees knew or suspected that their constitution made any but adequate provision for the requirements of § 610. On this record, we think summary judgment for the appellees was justified.[7]

We do not hold that the UAW's CAP structure satisfied the "segregated fund" requirements of § 610 in the years relevant to the damage claims, or that it presently satisfies 2 U.S.C. § 441b. That issue is not before us. Insofar as the appellants intend to challenge the validity of the CAP structure, as opposed to a claim that particular officers violated their duty to the union, they press claims against the union, which are not cognizable under a § 501 derivative action.

We affirm in part and reverse in part the dismissal of the § 201 claim. We affirm the dismissal of the § 501 claim. We remand the case for further proceedings consistent with this opinion.

ROSS, Circuit Judge, dissenting.

## COUNT II

I would reverse the dismissal of appellants' section 501 claim, because I do not agree that as a matter of law the challenged expenditures were "clearly authorized" by the UAW constitution.

By dismissing the section 501 claim at this stage of the proceedings,[1] the majority

---

that it is reasonable to infer that the CAP structure is intended to comply with that statute.

7. We do not hold that violations of 18 U.S.C. § 610, and of its successor statute 2 U.S.C. § 441b, can never amount to a violation of § 501. Insofar as it is not reasonable to infer that a given donation was authorized, we think there is a remedy under § 501 for violations of federal election laws. *Cf. Miller v. American Telephone & Telegraph Co.*, 507 F.2d 759 (3rd Cir. 1974). We merely hold that apparent authority, if relied on in good faith, is a defense to liability under § 501. *See McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

1. Although treated as a summary judgment because matters outside the pleadings were considered, Count II was dismissed for failure to

state a claim. *See* Fed.R.Civ.P. 12(b). We therefore review the dismissal in light of the following standards:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. * * *
>
> [A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery. Finally, a complaint should not be dismissed merely because the court doubts that a plaintiff will

in effect confers unlimited discretion upon UAW International officers in their expenditure of the huge amounts of money collected annually from the union membership.[2] In my opinion, the UAW constitution does not grant completely unfettered discretion to the officers in their expenditure of union funds.[3]

The UAW's objectives as set forth in Article 2 of its constitution include improving working conditions, seeking election of candidates and passage of legislation "in the interests of all labor," working for repeal of laws "unjust to labor," obtaining unemployment insurance, engaging in political and other activities "which further, directly or indirectly, the joint interests of the membership * * * in the improvement of general economic and social conditions," and assisting organizations "having purposes and objectives *similar or related*" to those of the UAW. (Emphasis supplied.)

Article 7(2) authorizes expenditure of UAW funds to achieve these purposes and objectives "not inconsistent therewith" and purposes the Executive Board believes "will further *the general interest and welfare of the membership*." (Emphasis supplied.)

Article 23(1) indicates that the function of the UAW Community Action Program is *"to improve the economic and social conditions of UAW members and their families and to promote the general welfare and democratic way of life for all people."* (Emphasis supplied.)

I do not consider the above-quoted language meaningless or superfluous. The union constitution clearly contemplates a rela-

tionship of some kind between the use of union funds and the interests and welfare of the union membership. Had the contested contributions been made to foreign governments, terrorist organizations or groups seeking destruction of the "democratic way of life," none of the avowed objectives of the UAW would have been served and the donations clearly would not have been authorized.

Appellants assert in Count II that appellees have contributed union assets "to various organizations and groups espousing and promoting ideological doctrines and causes *totally unrelated to, and in many instances antithetical to*, the interests and welfare of the union and its members." The complaint lists thirteen organizations as recipients of these union funds as heretofore set forth in the majority opinion.

Because appellants were denied discovery and an opportunity to prove their claim, the record does not reflect the goals and methods espoused by the recipients of the challenged UAW contributions. If the ends and means adopted by these organizations were, as alleged, antithetical to the interests and welfare of the UAW membership and inconsistent with the objectives of the UAW, I believe appellants have a cause of action under section 501 for misuse of union funds by UAW officers.

Both the majority and the panel of the Seventh Circuit in *McNamara v. Johnston,* 522 F.2d 1157 (7th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), pay lip service to the requirement

prevail in the action. That determination is properly made on the basis of proof and not merely on the pleadings.

The question, therefore, is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

*Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.) (citations omitted), *petition for cert. filed,* —— U.S. ——, 99 S.Ct. 839, 59 L.Ed.2d 35 (1978).

2. The record reflects that the combined dues income of the International and Local unions for the years 1969, 1970 and 1971 averaged $148,409,826.00 per year.

3. Any resolution passed by the governing officers which conflicted with the provisions of the UAW constitution or exceeded the powers conferred therein would be invalid and could not be relied upon as authority for expenditures of union funds. *Highway Truck Drivers and Helpers, Local 107 v. Cohen,* 284 F.2d 162, 164 (3d Cir. 1960), *affirming,* 182 F.Supp. 608, 616–22 (E.D.Pa.1960).

that union funds be spent as authorized by the constitution, bylaws or appropriate convention resolution. But they ignore the allegation of appellants that the questioned expenditures *were in violation* of the union's constitution since they were alleged to be not "in the interests of all labor" or "which further, directly or indirectly, the joint interests of the membership * * " or in "the general interest and welfare of the membership." It is upon this aspect of the case that I have attempted to focus my dissent and the aspect thereof which the majority has all but ignored.

STEPHENSON and HENLEY, JJ., join in this dissenting opinion.